UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cesar de la Garza,

      Plaintiff,

v.

Joan Fabian, et al.,

      Defendants.

Civil No.: 06-0208 (RHK/JJG)

**REPORT AND RECOMMENDATION**

JEANNE J. GRAHAM, United States Magistrate Judge

      The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on Plaintiff's two motions for Temporary Restraining Order and Preliminary Injunction (Doc. Nos. 33 and 40). Also pending before the Court are two motions from the parties seeking extensions of certain filing deadlines related to Plaintiff's motions for injunctive relief (Doc. Nos. 55 and 67). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons discussed herein, the undersigned recommends Plaintiff's requests for injunctive relief be denied, and that the parties' scheduling motions be denied as moot.

**I.    INTRODUCTION**

      The instant motions arise from an action filed by pro se Plaintiff, Cesar de la Garza, a prisoner currently incarcerated at the Minnesota Correctional Facility-Oak Park Heights ("OPH"). Plaintiff initiated the instant action against numerous prison officials alleging civil rights violations including denial of his right of access to courts, invasion of privacy, and denial of due process in placing him in a super-maximum segregation unit. In his requests for injunctive relief, Plaintiff claims his right of access to courts has been violated by prison officials' refusal to allow him greater access to legal materials related to his legal pursuits,

and by acts of obstruction and retaliation by prison guards in response to his pursuit of the instant civil rights lawsuit.

Plaintiff was convicted of second degree murder in February 2002, and is presently serving a 326-month sentence at OPH. Plaintiff is housed in OPH's Administrative Control Unit ("ACU"), an isolation unit for offenders with significant discipline and behavior problems. Pursuant to Minnesota Department of Corrections policy, a prisoner's personal property is stored in two state-issued footlockers.[1] While in the ACU, a prisoner is allowed a maximum of five pounds of legal materials in his cell at any given time.[2] All excess legal materials must be stored in a legal bin. The materials in this legal bin are counted as part of an inmate's property limit of two footlockers total. Any excess property must be disposed of either by destruction or by sending excess materials to third-parties outside of the prison.

Plaintiff's legal materials are apparently quite voluminous. Plaintiff states his legal papers include: (1) papers associated with his state criminal trial, including a five-volume trial transcript; (2) papers related to the direct appeal of his state criminal conviction; (3) papers related to the collateral appeal of his state criminal conviction; (4) papers related to his federal habeas corpus petition; (5) papers related to a federal

---

[1] This Report and Recommendation does not reach the merits of Plaintiff's challenge to certain prison regulations. However, the Court notes that under well-established law, courts owe "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Prison regulations reasonably related to legitimate penological needs can be valid even though they may impinge on an inmate's constitutional rights. *See Turner v. Safely*, 482 U.S. 78, 89 (1987).

[2] Minnesota Department of Corrections Division Directive 301.83(B)(4)(b) allows for "5 lbs" of "Legal materials" in the Administrative Segregation Unit, "unless prohibited for safety and security reasons as determined by staff." 801.83(M)(3) provides that possession of subscribed legal or legislative publications or photocopies of articles from such publications, while classified as "mail," is subject to the overall five pound legal material limit.

civil rights lawsuit he brought in 2004; (6) papers related to his appeal in the 2004 federal civil rights case; (7) papers related to a second civil case he filed in federal court in 2005; (8) papers related to the instant civil rights action filed in 2006; (9) all legal research materials he has received from various prison libraries; (10) legal publications from various organizations concerning prisoner rights and legal news; and (11) communications with attorneys and personal notes relating to his criminal and civil lawsuits. According to Plaintiff, his legal papers and materials amount to a total of approximately 150 pounds of papers.

Affidavits submitted by Defendants state that during the time Plaintiff has been housed in the ACU, he has been given multiple opportunities to go through his personal property and legal materials. On at least two separate occasions, Plaintiff has been given the opportunity to choose what legal materials to keep in his cell, what legal materials to keep in his legal bin and what legal materials to send out of the institution, in the event there was any excess. Defendants state Plaintiff will also been given the opportunity to displace some of the personal property in his footlockers with legal materials and send excess personal property out of the institution or discard it.

According to Defendants, inmates in the ACU are normally given access to their legal bin once every thirty days to review materials. However, when an inmate demonstrates he has an active case with a court-ordered deadline, he may be given special accommodations and receive additional access to his legal bin. Any new materials retrieved must be exchanged with materials already in the prisoner's cell if the total amount of legal materials would exceed the five pound maximum. An ACU inmate may also request copies of legal materials through a cell pick-up system and may make inquiries to the law librarian. All requests for access to legal materials and inquiries to the law librarian are made in writing through the "kite

system."[3]

## II. DISCUSSION

Construing the pro se Plaintiff's voluminous submissions liberally, the Court concludes Plaintiff is seeking an order prohibiting prison officials and personnel from continuing to interfere with Plaintiff's right to access the courts. Plaintiff alleges Defendants' interference takes a variety of forms. Plaintiff contends that he was transferred to another facility that housed prisoners who want to harm or kill him in retaliation for his pursuit of his legal claims. Plaintiff claims his legal papers were not transferred with him. Plaintiff also alleges intentional suppression of his legal activities through verbal threats by guards, the destruction and misplacement of Plaintiff's legal papers by guards and the lack of provision of legal papers by guards when requested by Plaintiff. Finally, Plaintiff claims his right to access the courts is being unlawfully denied through the imposition of arbitrary restrictions and inadequate access to his legal materials under prison policies and regulations limiting the amount of legal materials Petitioner can maintain in his cell and in his storage bins at any given time during his incarceration in the segregation unit.

### A. Standard of Review

Eighth Circuit courts must balance the four factors outlined in *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109 (8th Cir.1981), before granting injunctive relief. These factors include: (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted,

---

[3] Pursuant to Minnesota Department of Corrections Policy 303.101 a "Kite Form" is a printed form issued by the department. Offenders use a kite to communicate to staff requests for appointments, information, programming, or to informally resolve an issue.

4

(3) the probability that the moving party will succeed on the merits, and (4) the public interest. *Id.* at 113; *see also Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Temporary restraining orders and preliminary injunctions are extraordinary remedies, and the party seeking such relief bears the burden of establishing all of the *Dataphase* factors. *Id.* The burden is particularly heavy where, as here, the moving party seeks not to maintain the status quo, but to gain relief similar to that which it would obtain after a trial on the merits. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 486 (8th Cir.1993).

      **B.**      **Irreparable Harm**

Plaintiff complains he will be irreparably harmed without the injunctive relief he seeks. Plaintiff contends the conduct of prison officials and guards is hindering his efforts to pursue his legal claims, and asserts that he "risks losing the ability to file meaningful challenges to [his] criminal convictions and conditions of confinement." *See* Plaintiff's Mem. in Support of Motion (Doc. No. 41 at 2). Under established law, however, Plaintiff must make a showing of irreparable harm, not the mere risk of harm. *See ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 225 (3d Cir.1987); *Internet Inc. v. Tensar Polytechnologies, Inc.*, Civ. No. 05-317 (RHK/ABJ) WL 2453170, at 4-5 (D.Minn. Oct. 3, 2005) (Kyle, J.).

The right of access to the courts, a fundamental right under the Constitution, is not diminished when a prisoner is housed in a segregation unit. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right to access courts "applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." *Scheeler v. City of St. Cloud,* 402 F.3d 826, 830 (8th Cir.2005). However, while the right is infringed upon when

5

prison officials "actively interfer[e] with inmates' attempts to prepare legal documents," prisoners do not have "abstract freestanding rights to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to show denial of access to courts, a prisoner must allege he has suffered an actual injury, such as the loss or rejection of a nonfrivolous legal claim regarding sentencing or the conditions of confinement. *Id.*

Here, Plaintiff asserts prison officials and guards are engaging in a variety of activities that result in a denial of his right to access the court. However, the file in this matter wholly contradicts all of Plaintiff's contentions that he is being harmed by a denial of his right to access the Courts. First, Plaintiff has submitted a 117 page handwritten affidavit consisting of 270 separate paragraphs in support of one of the motions currently before the court. In this often rambling and frequently redundant affidavit and memorandum, Plaintiff details almost four years of court proceedings in an effort to demonstrate that he has had inadequate access to his legal materials and that his right to the courts has thus been infringed upon by Defendants. After reviewing Plaintiff's assertions, the Court concludes the detail provided in Plaintiff's affidavit regarding his past court proceedings and the substance of those experiences do not support his assertions of inadequate access.

By way of example, Plaintiff indicates he was denied appellate review in 2005 because the brief he submitted to the state appellate court exceed the forty-five page maximum permitted under the rules, contained no appendix and lacked Plaintiff's signature. In addition, Plaintiff indicates he failed to submit an Affidavit of Proof of Service. Yet, Plaintiff contends his limited access to his legal materials has prevented him from gaining meaningful access to the courts. Plaintiff describes several extensions he was given by the appellate court for filing various papers and his submissions to the court thereafter, and then

indicates his appeal was eventually heard by the appellate court. The fact that Plaintiff failed to pursue all possible claims on appeal does not change the fact that the appellate court accepted the legal papers he prepared and submitted and afforded Plaintiff appellate review. These circumstances are but one example of Plaintiff's own descriptions of communications and filings with the courts that contradict Plaintiff's present assertions of interference with his access to the courts. These descriptions do little to demonstrate Plaintiff has suffered a direct injury as a result of Defendants' regulations and conduct.

In addition, numerous submissions by Plaintiff in the instant case further discredit his assertions that he is being denied access to the courts. Plaintiff filed a thirty-two page handwritten Complaint on January 12, 2006. Since then, Plaintiff has submitted eighty-five pages of argument objecting to the undersigned's denial of Plaintiff's motion for appointment of counsel, four motions for injunctive relief, including over two hundred pages of affidavits and exhibits in support thereof, a motion for extension of time in which to reply to Defendant's opposition to Plaintiff's requests for injunctive relief, and a Reply brief regarding the instant motion that totals over 100 pages when all attached affidavits and exhibits are considered. The Court also notes Plaintiff's submission of a 221 page "Federal Habeas Corpus 2254 Petition" on December 5, 2006, which includes an additional 157 pages of affidavits and supporting documents.[4]

These undisputed facts clearly demonstrate Plaintiff's access to his legal materials and documents while in the ACU has enabled him to prepare and submit numerous legal documents to both state and federal courts in several different actions. Plaintiff has prepared numerous and voluminous motions and memoranda notwithstanding the alleged conduct of prison guards, his brief transfer to another facility, and

---

[4] This civil action has also been assigned to this Magistrate Judge. *See Cesar del la Garza v. State of Minnesota*, 06-cv-4767 (RHK/JJG).

the limitations on the amount of legal materials he may have in his cell at one time under existing prison regulations. While it is true that under the policies and regulations of the prison and administration of the ACU, Plaintiff might have to make repeated requests for legal materials in order to change out materials he has in his cell with new ones he finds he needs to comply with the five pound prison policy while in the ACU, such procedures rise only to the level of inconvenience. Plaintiff has offered no reason for needing all of his legal materials in his cell at the same time, and his complaints amounting to inconvenience are insufficient to demonstrate that he has suffered actual injury. *See Lewis*, 518 U.S. at 354 (prisoner must allege more than an inability to litigate effectively; he must show he has been precluded from enforcing some legal right). The evidence in the record does not support Plaintiff's conclusory allegations that prison officials and guards are denying him access to the courts. It is clear from the record that Plaintiff has full access to his legal materials at the OPH facility, albeit not all at one time.

Under these circumstances, the Court finds Plaintiff has completely failed to demonstrate that he will be irreparably harmed by the denial of the injunctive relief he seeks. This Court has recently addressed the dispositive impact of a moving party's failure to demonstrate irreparable harm by stating:

> The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. Thus to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. Failure to show irreparable harm is an independently sufficient ground upon which to deny [preliminary injunctive relief]. [A]n injunction cannot issue based on imagined consequences of an alleged wrong. Instead, there must be a showing of imminent irreparable injury. Thus, if [the moving party] fails to prove irreparable harm, its request for a preliminary injunction must be denied without regard to the remaining *Dataphase* factors.

*Internet Inc. v. Tensar Polytechnologies, Inc.*, Civ. No. 05-317 (RHK/ABJ) WL 2453170, at *4 -5 (D.Minn. Oct. 3, 2005) (Kyle, J.) (Internal citations and quotations omitted). Accordingly, Plaintiff's failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.

8

*Id.*; *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citing *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996)).  On the basis of the record before it, the Court need not examine the remaining three *Dataphase* factors in order to recommend that Plaintiff's motions for injunctive relief be denied.

### III.   RECOMMENDATION

Based upon the foregoing, the submissions of the parties and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

(1)   Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. No. 33) and Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. No. 40) be **DENIED** in their entirety;

(2)   Defendants' Motion for Extension of Time to File Response/Reply (Doc. No. 55) be **DENIED AS MOOT** in light of the submission of Defendants' filing of a response on July 21, 2006; and

(3)   Plaintiff's Motion for Extension of Time to File Reply Memorandum (Doc. No. 67) be **DENIED AS MOOT** in light of Plaintiff's submission on August 30, 2006.

Dated: January 29, 2007                                          s/Jeanne J. Graham

_____
JEANNE J. GRAHAM
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by February 15, 2007.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500

words.  A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.